FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 08, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NOCOMIE TOMIA MOORE,<br><br>                    Plaintiff,<br><br>        v.<br><br>NAPHCARE, INC., an Alabama Corporation, DENAE PAUL, an individual, TSUBASA BRUCE, an individual, SPOKANE COUNTY, A Political Subdivision of the State of Washington, JACOB PIETZ, an individual, TERENCE TOROSIAN, an individual, KIMBERLY SIPES nka KIMBERLY WEEKS, an individual, SHERYL LOMONACO, an individual, MARILYN VANTASSEL, an individual, AMANDA ELLIS, an individual.<br><br>                    Defendants. | NO. 2:22-CV-0256-TOR<br><br>ORDER GRANTING DEFENDANTS' *DAUBERT* MOTION AND NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Defendants' Joint *Daubert* Motion (ECF No.

122) and Defendant NaphCare Inc., Denae Paul, Tsubasa Bruce, and Spokane

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

County's Motion for Summary Judgement (ECF No. 123).[1]  This matter was submitted for consideration without oral argument.  The Court has reviewed the record and files herein and is fully informed.  For the reasons discussed below, Defendants' Joint *Daubert* Motion (ECF No. 122) is GRANTED and Defendant NaphCare Inc., Denae Paul, Tsubasa Bruce, and Spokane County's Motion for Summary Judgment (ECF No. 123) is GRANTED.

## BACKGROUND

This matter arises out of alleged excessive force and denial of medical treatment while Plaintiff was incarcerated at the Spokane County Jail.  Plaintiff first developed a pain similar to a "pulled groin," sometime in the second half of 2019 while incarcerated, awaiting sentencing.  ECF No. 125 at 3, ¶ 6.  As the weeks passed, the pain grew more intense, and Plaintiff developed a limp.  She submitted a sick call request on October 2, 2019, indicating that she had pulled her

---

[1] The Court notes that Defendant Spokane County is listed as a party to this Motion for Summary Judgment for the limited purpose of medical care and treatment only as noticed in ECF Nos. 104 and 105.  The parties have entered a notice of partial settlement with the "Spokane Count Defendants" as it relates to her excessive force claims, and this Order does not disrupt any forthcoming settlement.  See ECF No. 129.

groin "about a month ago." *Id*. at 4, ¶¶ 7–8.  After an evaluation by a non-party nurse, Plaintiff was prescribed ibuprofen in response to her "pulled groin." *Id*., ¶ 9. On October 7, 2019, Plaintiff was involved in an altercation in which correctional staff exerted force, and she was assessed by a non-party nurse for pain in her hip. *Id*., ¶¶ 10–11.  Plaintiff was then assessed by Defendant Physician's Assistant Dena Paul on October 22, who considered the injury a muscle strain or sprain with possible nerve entrapment. *Id*. at 6, ¶¶ 14–15.  PA Paul ordered a higher strength ibuprofen to be administered twice a day and provided exercises to strengthen the surrounding muscles. *Id*., ¶ 15.

On October 29, 2019, while descending from a bunk bed, Plaintiff heard a pop and fell to the ground in pain stemming from her right hip. *Id*. at 7, ¶ 17.  PA Paul responded to the cell, and upon examination of Plaintiff, did not notice any palpable deformity, redness of the skin, bruising, swelling, or warmth.  Plaintiff had some pain with some movements but experienced no discomfort with others. *Id*. at 7–8, ¶¶ 18–19.  While the exam did not yield results that warranted transport to the hospital, PA Paul did order an X-ray of Plaintiff's right hip, pelvis, and knee. *Id*. at 8, ¶ 20.  Plaintiff was placed on medical watch. *Id*., ¶ 21.  On the evening of October 29, Plaintiff was assessed by Nurse Tsubasa Bruce, who assisted her to the bathroom. *Id*. at 9, ¶ 22.  During this time, Plaintiff was "screaming in pain," but allegedly stopped when Nurse Bruce told her that immediate transport to the

hospital was not possible. *Id*.

On October 30, Plaintiff was seen by a non-party nurse who reported that Plaintiff was asking to leave the medical cell and return to her unit, as she was able to use the bathroom on her own. *Id*., ¶ 24. Plaintiff was also seen by PA Paul, who also reported that Plaintiff was indicating an improvement in her symptoms, but determined that an X-ray was still warranted to rule out a fracture. *Id*. at 10–11, ¶ 25.

Plaintiff received an X-ray on October 31, 2019, and it was revealed she had a femoral hip fracture. *Id*. at 11–12, ¶ 28. PA Paul discussed this finding with a staff physician, and Plaintiff was transported to Providence Sacred Heart Medical Center for treatment. *Id*. at 12, ¶ 29. After receiving additional X-rays and CT imaging, it was determined that Plaintiff had a lesion on the femoral neck, possibly reaching as far back as 2010, which had grown and weakened the bone. *Id*. at 12–13, ¶ 31. Plaintiff underwent surgery which confirmed that the fracture was pathological in nature. *Id*. at 13, ¶ 32. She was discharged from the hospital on November 5, 2019, and received continuing care at the Spokane County Jail until she was transferred on December 16, 2019. *Id*., ¶¶ 33, 34.

Plaintiff brings claims for violations of the Eighth and Fourteenth Amendment under 42 U.S.C. § 1983 for excessive force and unconstitutional policies and practices, and for violations of RCW 7.70, Washington State's

Medical Malpractice statute, and other tort claims. Defendants seek to exclude

Plaintiff's expert medical witness as not meeting the required standards to offer

such testimony. ECF No. 122. Plaintiff has not responded to Defendants' *Daubert*

Motion. Defendants Paul, Bruce, NaphCare Inc., and Spokane County also filed a

Motion for Summary Judgment, arguing that Plaintiff is unable to support her

claims stemming from medical treatment, especially without the aid of an expert

medical opinion. ECF No. 123. Plaintiff responded in opposition, but did not file

a separate Statement of Disputed Material Facts, in violation of Local Civil Rule

56(c)(1)(B). ECF No. 127.

## DISCUSSION

### I.    Exclusion of Plaintiff's Expert Witness

Plaintiff retained Jonathan Pasma, D.O., as her expert medical witness in this

case. ECF No. 124-1 at 3. Dr. Pasma received his Doctorate of Osteopathy from

Pacific Northwest University of Health Sciences in 2012, and he is currently a

licensed, board certified physician in Physical Medicine & Rehabilitation. *Id*. at 8–

9. In rendering a report for this case, Dr. Pasma reviewed "all disclosed records . .

. including pertinent imaging, nurses' notes, provider notes, and 'sick call log.'"

*Id*. at 5. After reviewing the background of the injury, Dr. Pasma determined that

Plaintiff fell from the top bunk of the bed in her cell on October 29, 2019, and

despite conveying her intense pain to medical staff at the jail, was not taken to the

1   hospital until October 31, 2019, after an X-Ray confirmed her right hip fracture.

2   *Id.* The entirety of Dr. Pasma's analysis is contained in one paragraph and states

3   the following:

> After reviewing the medical records, I believe that the expected and
> reasonable medical care following Ms. Moore's fall was mismanaged,
> given the delayed triage. Based on the documents reviewed, I believe
> Ms. Moore should have undergone immediate hip X-ray following the
> fall on 10/29/19, given that she was unable to bear weight status post
> fall, her pain was rated 10/10 on VAS, and she was crying "take me to
> the hospital." Additionally, she was evaluated the following day, where
> she again was unable to bear weight and/or ambulate. Ms. Moore
> eventually had an X-ray on 10/31 (2 days later) that showed an acute
> displaced hip fracture. Ultimately, Ms. Moore's care, specifically
> timely triage, was improperly delayed 2 days, which of course implies
> that unnecessary pain/suffering occurred.

11  *Id.* at 6.

12      Defendants argue that Dr. Pasma should be excluded for a number of

13  reasons: (1) his disclosure is incomplete as he does not specifically reference any

14  Defendant or describe in detail data or facts considered in rendering his decision;

15  (2) his report and testimony is improperly offered as a matter of Washington law;

16  and (3) his report and testimony do not satisfy Federal Rule of Evidence 702 or

17  *Daubert.* ECF No. 122. The Court considers each in turn.

18      A.  Exclusion pursuant to Washington State Medical Malpractice Law

19      Plaintiff alleges violations of Washington State's medical malpractice

20  statute, RCW 7.70. In civil cases "state law governs the witness's competency

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

1  regarding a claim or defense for which state law supplies the rule of decision."

2  Fed. R. Evid. Rule 601; *see also Trevino v. United States*, 804 F.2d 1512, 1516

3  (9th Cir. 1986).  Here, the Washington state law requires that a plaintiff

4  demonstrate, "[t]he health care provider failed to exercise the degree of care, skill,

5  and learning expected of a reasonably prudent health care provider at that time in

6  the profession or class to which he or she belongs, in the state of Washington,

7  acting in the same or similar circumstances."  RCW 7.70.040(1).  In the context of

8  a medical negligence claim under Washington law, "expert testimony will

9  generally be necessary to establish the standard of care . . . and most aspects of

10  causation. . . "  *Young v. Key Pharms., Inc.*, 112 Wash.2d 216, 228 (1989) (citation

11  omitted).  Washington law grants broad discretion to the trial judge in ruling on the

12  competence of expert witnesses.  *Id*. (citing *Balmer v. Dilley*, 81 Wash. 2d 367,

13  372 (1972) (en banc)).  Once the competency standards under Rule 601 are

14  satisfied, the trial court must apply the standards of Rule 702 to determine whether

15  the expert testimony is admissible.  *Liebsack v. United States*, 731 F.3d 850, 857

16  (9th Cir. 2013).

17       In Washington, an expert must articulate what a reasonable medical

18  professional would or would not have done, and then specify how a defendant

19  failed to act in that manner and show that this failure was the cause of injury.  *Keck*

20  *v. Collins*, 184 Wash.2d 358, 371 (2015).  "The expert may not merely allege that

1  the defendants were negligent and must instead establish the applicable standard

2  and how the defendant acted negligently by breaching that standard." *Reyes v.*

3  *Yakima Health Dist.*, 191 Wn.2d 79, 86–87 (2018).  The expert's opinions must

4  also be based in fact.  *Id*.

5         Dr. Pasma's report does not contain any sort of standard on which he bases

6  his opinion.  He does not analogize the present case with any hypothetical

7  situation, study on which he has reviewed, or real past treatment in which a patient

8  presenting with a similar injury to Plaintiff received a different standard of care

9  than what was provided.  He offers nothing by way of his perspective in the

10  practice of medicine that establishes how a specific member of the medical team at

11  the Spokane County Jail should have reacted, he instead draws cursory

12  conclusions.  *See Winkler v. Giddings*, 146 Wn. App. 387, 392–93 (2008)

13  (upholding the trial court's dismissal of an expert medical witness after

14  determining that he was unfamiliar with the standard of care required in

15  Washington); *Chervilova v. Overlake Obstetricians & Gynecologists*, *PC*, 30 Wn.

16  App. 2d 120, 125–26 (2024).  Even his findings that Plaintiff should have

17  undergone an immediate hip X-ray on October 29, 2019, and that her "triage" was

18  improperly delayed, are undefined and unsupported by anything other than his

19  vague review of the records, but again not premised on his position as a physician.

20  Therefore, Dr. Pasma is not a competent expert witness pursuant to relevant

1  Washington State law and is excluded.

2    B. Exclusion based on Federal Rule of Evidence 702 and *Daubert*

3    Plaintiff also asserts violations of her Eighth and Fourteenth Amendment

4  rights under 42 U.S.C. § 1983.  The admission of expert witness testimony is

5  governed by Federal Rule of Evidence 702, which provides:

6    A witness who is qualified as an expert by knowledge, skill,
    experience, training, or education may testify in the form of an
7    opinion or otherwise if: (a) the expert's scientific, technical, or other
    specialized knowledge will help the trier of fact to understand the
8    evidence or to determine a fact in issue; (b) the testimony is based on
    sufficient facts or data; (c) the testimony is the product of reliable
9    principles and methods; and (d) the expert has reliably applied the
    principles and methods to the facts of the case.

10

11  Fed. R. Evid. 702.

12    In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court

13  explained that trial courts must perform a "gatekeeping" function to ensure that

14  expert testimony conforms to Rule 702's relevance and reliability requirements.

15  509 U.S. 579, 597 (1993).  *Daubert* identifies four non-exclusive factors a court

16  may consider in assessing the relevance and reliability of expert testimony: (1)

17  whether a theory or technique has been tested; (2) whether the theory or technique

18  has been subjected to peer review and publication; (3) the known or potential error

19  rate and the existence and maintenance of standards controlling the theory or

20  technique's operation; and (4) the extent to which a known technique or theory has

gained general acceptance within a relevant scientific community. *Id.* at 593-94.

These factors are not to be applied as a "definitive checklist or test," but rather as

guideposts which "may or may not be pertinent in assessing reliability, depending

on the nature of the issue, the expert's particular expertise, and the subject of his

testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).  The

ultimate objective is to "make certain that an expert, whether basing testimony

upon professional studies or personal experience, employs in the courtroom the

same level of intellectual rigor that characterizes the practice of an expert in the

relevant field." *Id.* at 152.  "[N]othing in either *Daubert* or the Federal Rules of

Evidence requires a district court to admit opinion evidence that is connected to

existing data only by the *ipse dixit* of the expert." *Id*. at 157 (quoting *Gen. Elec.

Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

        "The determination whether an expert witness has sufficient qualifications to

testify is a matter within the district court's discretion." *United States v. Garcia*, 7

F.3d 885, 889 (9th Cir. 1993) (citation omitted).  "Rule 702 contemplates a broad

conception of expert qualifications." *Hangarter v. Provident Life & Accident Ins.

Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (internal quotation marks and citation

omitted) ("[T]he advisory committee notes emphasize that Rule 702 is broadly

phrased and intended to embrace more than a narrow definition of qualified

expert." (citation omitted)).  Where a witness has considerable experience working

1    in a specific field, the witness's "lack of particularized expertise" in one aspect of

2    that field, "goes to the weight accorded her testimony, not to the admissibility of

3    her opinion as an expert." *Garcia*, 7 F.3d at 889-90.  In such situations,

4    "[v]igorous cross-examination, presentation of contrary evidence, and careful

5    [application of] the burden of proof are the traditional and appropriate means of

6    attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

7         The determination of whether the offered testimony will assist the factfinder

8    requires the Court to evaluate its relevance and reliability.  *See Daubert*, 509 U.S.

9    at 591-92, 597.  Evidence is relevant if "(a) it has any tendency to make a fact

10   more or less probable than it would be without the evidence; and (b) the fact is of

11   consequence in determining the action."  Fed. R. Evid. 401.  The reliability of

12   expert testimony is evaluated in regard to the expert's "basis in the knowledge and

13   experience of his discipline." *Kumho Tire Co.*, 526 U.S. at 148 (1999) (quoting

14   *Daubert*, 509 U.S. at 592).  This inquiry is "flexible," and reliability must be

15   evaluated "in light of the particular facts and circumstances of the particular case."

16   *Id.* at 158; *see also Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th

17   Cir. 2014), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766

18   (9th Cir. 2020).

19        Defendants contend that Dr. Pasma's report and testimony is neither reliable

20   nor relevant, as his opinion is based on an inaccurate review of the record, he lacks

the specialized knowledge of treatment of patients in a corrections setting, and he does not apply the higher degree of analysis typically found in an expert report. ECF No. 122 at 16–20. The Court largely agrees, absent explanation from Plaintiff to the contrary.[2]

As to reliability, Dr. Pasma is a physiatrist and testified as his deposition that he has no experience working in an urgent care, emergency room, or corrections setting, and has not independently diagnosed a hip fracture since residency. ECF No. 124-3 at 9–10. Though his report does not describe in any detail what his practice currently focuses on, Defendants represent that Dr. Pasma has worked at outpatient clinics since completing residency. ECF No. 122 at 4. In discussing his background during his deposition, Dr. Pasma stated that there are some nuances in a corrections facility that are beyond his ability to offer an opinion on, given his practice in an outpatient setting. ECF No. 124-3 at 23, 36. He also stated he was unfamiliar with NaphCare and his report is devoid of any suggestion he reviewed the entity's internal policies. ECF No. 124-3 at 35.

More troubling for the reliability prong of the analysis is Dr. Pasma's scant and arguably incorrect account of the factual background of the events of this case.

---

[2] The Court notes that Plaintiff's first name is spelled incorrectly in Dr. Pasma's report. *See* ECF No. 124-1 at 5.

Dr. Pasma report states that "Ms. Moore fell from the top bunk on 10/29/19 while on medical watch at the Spokane County Jail," but provides no mention of the underlying cause of injury. ECF No. 124-1 at 5. Both the medical records provided, and Plaintiff's own testimony, indicate that the injury was the result of a pathological fracture, caused by a growth that compromised her hip bone. ECF No. 124-4 at 12–13; ECF No. 124-7 at 10, 11, 12. Dr. Pasma's report is devoid of any mention of Plaintiff's repeated testimony of hearing a "pop," after stepping down from the top bunk. ECF No. 124-4 at 14; ECF No. 124-5 at 28, 30; ECF No. 124-7 at 11; ECF No. 124-9 at 31; ECF No. 124-9 at 62–63. Dr. Pasma's report and testimony also inaccurately represented that an X-ray for Plaintiff was not ordered until October 30, when it was ordered the day of injury, October 29. ECF No. 124-2 at 5; ECF No. 124-3 at 20; ECF No. 124-5 at 28. And Dr. Pasma mistakenly stated in his deposition that Spokane County Jail cannot perform X-rays, when Plaintiff received a mobile X-ray on October 31, which motivated her transfer to the emergency department at Sacred Heart Medical Center. ECF No. 124-3 at 21; ECF No. 124-5 at 43.

The key focus of Rule 702's "sufficient facts or data" element is a foundation, requiring a district court to determine whether an expert "had sufficient factual grounds on which to draw conclusions." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022) (quoting *Damon v. Sun Co., Inc.*, 87 F.3d

1467, 1475 (1st Cir. 1996)).  Based on the information as presented above, Dr.
Pasma's report is wholly deficient in forming a solid foundation on which to offer
an opinion.  He has not worked in any sort of emergency or urgent medical care
setting, and himself disclaimed that he does not have the background to opine on
some of the more "nuanced" areas of providing healthcare in a prison setting.
Moreover, his lack of a fully developed record and any mention of the discrete
documents he reviewed and relied on does not properly lay a foundation from
which a Rule 702 opinion could be formed.

Even if the Court could look beyond the lack of reliability offered by Dr.
Pasma's report, the opinions he offers also lack the requisite relevancy such that
offering them to a factfinder would be helpful.  Rule 702 requires that an expert
witness be vested with "scientific, technical, or other specialized knowledge" that
"will assist the trier of fact" in their understanding of the evidence.  If satisfied, "a
witness qualified as an expert . . . may testify thereto in the form of an opinion."
Fed. R. Evid 702.  When evaluating an expert witness, a district court must ensure
that testimony, whether based on personal experience or professional studies,
"employs in the courtroom the same level of intellectual rigor that characterizes the
practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 142.

Dr. Pasma offers no basis for his findings, they are not grounded in any
professional experience or based on any scientific peer-reviewed study. *Daubert*,

509 U.S. at 593.  More importantly, Dr. Pasma's report does not contain any

analysis of a standard of care and any Defendant's specific breach.  He provides a

generalized conclusion that "Ms. Moore's care, specifically timely triage, was

improperly delayed 2 days, which of course implies that unnecessary

pain/suffering occurred," but offers nothing to support why this contention is true

from his expert position as a physician.  And stunningly, he stated in his deposition

that he was not asserting any violation of a standard of care by a nurse involved,

nor did he want to provide a "label," for the level of care provided by the

physician's assistant in this case.  ECF No. 124-2 at 36.  This is confirmed in his

report, as he offers no direct conclusion on any named Defendant's duty to provide

care, how that duty was breached, and the resulting injuries to Plaintiff.  Dr.

Pasma's report offers nothing relevant to this inquiry that the jury could not deduce

based on the medical records that could be offered.

## II.    Summary Judgment

In her Fourth Amended Complaint, Plaintiff brings claims of Eighth and

Fourteenth Amendment violations under 42 U.S.C. § 1983, violation of

Washington's Medical Malpractice statute RCW 7.70, and negligence.  ECF No.

88 at 18–20.  Defendants move for summary judgment on the basis that Plaintiff

has not sufficiently carried any of her claims.  ECF No. 123.

The Court may grant summary judgment in favor of a moving party who

demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id*. at 248.  Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id*.  The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

A. <u>Plaintiff's State Law Claims for Violation of RCW 7.70 and Undefined Torts</u>

As a practical matter, summary judgment is proper as to Plaintiff's medical malpractice claims based on the exclusion of her medical expert. Under Washington State law, as discussed at length above, the necessary standard of care and the cause of her injuries must be established by a competent medical expert. *See Boyer v. Morimoto*, 10 Wn. App. 2d 506, 519–20 (2019) (internal citations omitted) ("A defendant moving for summary judgment in a health care professional malpractice suit can meet its initial burden by showing the plaintiff lacks competent expert testimony to sustain a prima facie case of medical malpractice . . . The burden then shifts to the plaintiff to provide an affidavit from a qualified medical expert witness that alleges specific facts establishing a cause of action . . . Affidavits containing conclusory statements without adequate factual support are insufficient."). The Court questions counsel's judgment in retaining an unqualified and unprepared expert to offer an opinion in this matter.

Summary judgment is also proper with respect to Plaintiff's claim of negligence or intentional infliction of emotional distress. Plaintiff does not defend her tort claim in response to Defendants' Motion for Summary Judgment. Without a response, Plaintiff leaves unrebutted the contention that Defendants neither breached any duty they had to her, nor that they were the cause of her mental

1  anguish and physical suffering.  Fed. R. Civ. P. Rule 56(e)(2),(3)("If a party fails

2  to properly support an assertion of fact or fails to properly address another party's

3  assertion of fact . . . the court may . . . consider the fact undisputed for purposes of

4  the motion . . . grant summary judgment if the motion and support materials –

5  including the facts considered undisputed – show that the movement is entitled to

6  it.").  Here, the undisputed facts demonstrate that Plaintiff was receiving medical

7  treatment while incarcerated, when her injuries were discovered to be serious, she

8  was transported to the hospital, and her fracture was the result of a chronic issue.

9  *See* ECF No. 125 at 4–13.  While it is not clear whether Plaintiff is attempting to

10  make a general negligence claim or an intentional infliction of emotional distress

11  claim, *see* ECF No. 88 at 19, ¶¶ 54–55, regardless, she fails to demonstrate with

12  any specificity how Defendants breached a duty owed to her under a negligence

13  theory without providing a standard, or engaged in outrageous behavior under an

14  intentional infliction of emotional distress theory, *Kloepfel v. Bokor*, 149 Wn.2d

15  192, 196 (2003).  Summary judgment in favor of Defendants is therefore proper.

16      To the extent that Plaintiff is making a claim against Naphcare for corporate

17  negligence, that claim too fails.  Under Washington law, a hospital has a

18  nondelegable duty owed directly to patients.  *Ripley v. Lanzer*, 152 Wn. App. 296,

19  324 (2009).  There are four duties owed by a hospital under the theory of corporate

20  negligence: (1) to use reasonable care in the maintenance of buildings and grounds

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

for the protection of the hospital's invitees; (2) to furnish the patient supplies and equipment free of defects; (3) to select its employees with reasonable care; and (4) to supervise all persons who practice medicine within its walls. *Douglas v. Freeman*, 117 Wn.2d 242, 248 (1991). "In a professional malpractice case, the standard of care is based on proof of the customary and usual practices within the profession." *Douglas*, 117 Wash.2d at 248. The standard of care to which a hospital should be held may be defined by the Joint Commission on Accreditation of Hospitals, a hospital's own bylaws, or by statute. *Id*. Generally, the standard of care must be established by expert testimony. *Id*. Expert testimony is also generally required to prove causation. *Id*. at 252. Having excluded Plaintiff's expert, the Court finds summary judgment proper as she is likely unable to provide a standard of care and will be unable to prove causation. *Rathod v. United States*, 22-36045, 2023 WL 8710550, at *1 (9th Cir. Dec. 18, 2023) ("Summary judgment is appropriate where a plaintiff's expert fails to identify specific facts in support of a causation analysis.").

B. Plaintiff's Claims of Constitutional Violations Under 42 U.S.C. § 1983

The only claims Plaintiff defends in her opposition derive from the alleged violation of constitutional protection pursuant to 42 U.S.C. § 1983. ECF No. 127 at 3–9. In her Fourth Amended Complaint, Plaintiff argues that Defendants Paul and Bruce violated her Eighth and Fourteenth Amendment rights by denying her

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

adequate medical care and treatment and subjected her to inhumane conditions of confinement. ECF No. 88 at 18, ¶ 51. She also alleges that "Defendants Naphcare and Spokane County are liable under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Eighth and Fourteenth Amendments . . . by maintaining unconstitutional policies, practices, and customs," which resulted in her delay of medical treatment and inhumane confinement. *Id*. at 19, ¶ 53.

To make a claim under § 1983 a plaintiff must show that (1) a person acting under color of state law (2) committed an act that deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). The parties disagree as to whether the Eighth Amendment or the Fourteenth Amendment apply to this claim. Plaintiff argues for the Eighth Amendment, while Defendants argue that the Fourteenth Amendment. ECF No. 127 at 8; ECF No. 123 at 13–14. Defendants are correct that there is recognition that an individual who has been convicted but not yet sentenced may still be considered a pretrial detainee subject to the Fourteenth Amendment. *Glair v. City of Santa Monica*, 649 Fed. Appx. 411, 412 (9th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 392 & n. 6 (1989)) (discussing that the Eighth Amendment's prohibition of cruel and unusual punishments applies only after conviction and sentence). However, both the Ninth Circuit and other circuits have suggested that defendants in criminal cases who

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 20

have been found guilty and are awaiting sentencing are functionally no different

than those who have been sentenced. *See Resnick v. Hayes*, 213 F.3d 443, 448 (9th

Cir. 2000) (holding that a claim by a convicted prisoner awaiting sentencing is

governed by the Eighth Amendment rather than the Fourteenth Amendment);

*Tilmon v. Prator*, 368 F.3d 521, 523 (5th Cir. 2004) ("In our view, the adjudication

of guilt, *i.e.*, the conviction, and not the pronouncement of sentence, is the

dispositive fact with regard to punishment in accordance with due process.");

*Berry v. City of Muskogee*, *Okl.*, 900 F.2d 1489, 1493 (10th Cir. 1990) ("We see no

reason to treat incarcerated persons whose guilt has been adjudicated formally but

who await sentencing like pretrial detainees, who are detained primarily to ensure

their presence at trial and who cannot be punished; and we perceive every reason

to treat those awaiting sentencing the same as inmates already sentenced. The

critical juncture is conviction, either after trial or . . . by plea, at which point the

state acquires the power to punish and the Eighth Amendment is implicated."); *see*

*also Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Bell v. Wolfish*, 441 U.S. 520,

535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished

prior to an adjudication of guilt in accordance with due process of law.").

However, the Court agrees with Defendants' contention that this case is distinction

without difference because Plaintiff has not made the requisite showing that she

has experienced a constitutional violation.

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 21

1    If the Court were to accept that Plaintiff were a pretrial detainee, then to

2    prove an alleged violation of her right to adequate medical care, the Ninth Circuit

3    requires the claim to be evaluated under an objective deliberate indifference

4    standard. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016).  A

5    pretrial detainee must show (i) the defendant made an intentional decision with

6    respect to the conditions under which the plaintiff was confined; (ii) those

7    conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the

8    defendant did not take reasonable available measures to abate that risk, even

9    though a reasonable official in the circumstances would have appreciated the high

10    degree of risk involved—making the consequences of the defendant's conduct

11    obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's

12    injuries.  *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

13    However, a lack of due care does not in itself create a constitutional violation,

14    rather, an individual must show "more than negligence but less than subjective

15    intent, something akin to reckless disregard."  *Castro*, 833 F.3d at 1071.

16    If the Court were to find that Plaintiff were subject to the Eighth

17    Amendment, she must "allege acts or omissions sufficiently harmful to evidence

18    deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97,

19    106 (1976).  The Ninth Circuit has held that, in order to establish a claim of

20    inadequate medical care, a prisoner must initially "show a 'serious medical need'

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 22

by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations and quotations omitted). If a prisoner establishes a serious medical need, that prisoner must then "show the [official's] response to the need was deliberately indifferent." *Id*. In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). A delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

Plaintiff has failed under either standard. The only evidence Plaintiff relies upon in a demonstration that she received inadequate medical care is her own declaration, in which she does not demonstrate a lack of medical treatment:

> So that's when I made a request in, like, hey, I think I might have pulled
> a groin, like, if you guys can give me some medicine, some ibuprofen,

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23

or Tylenol, or something, and then they started giving me ibuprofen and Tylenol. Well, after, like, a month of that I'm, like, I wrote them back and I'm, like, this -- this is still going on, like, this -- this is probably not a pulled groin. And then they -- nothing. Nothing. They just continued to give me ibuprofen, and then that's when the lady, like, at my --I want to say maybe a month and a half in, I want to say. I'm not -- I'm not sure about these times, but I want to say, like, maybe a month and a half in, she came and see me, and she's, like, okay, well, do -- try these exercises, like, stretches and stuff like that.· So it was a paper with like, stretches and exercises to do for my leg. And she's, like, try that, and then I -- I tried that, and then nothing was working with that. So I -- that's when I wrote again, and I told them, hey, like, maybe if you guys can give me an X-ray. And that's when I got that response back.

ECF No. 127 at 5.

Plaintiff argues that "this testimony alone is sufficient to establish an issue of fact," but the Court disagrees, reading it as consistent with Defendants' undisputed facts that both PA Paul and Nurse Bruce responded to the level of injury as presented, and Plaintiff's presentation for a "pulled groin," up until the time of fracture.  See ECF No. 125 at 6–12, ¶¶ 14–29.  Moreover, this passage is not specific as to either of the individual defendants, and leaves unrebutted Defendants' expert witnesses' findings. Dr. Alfred Joshua, Defendants' expert with a background in emergency and correctional medicine, opined that there was no indication that providers at Spokane County Jail should have been placed on any more expeditious notice of the cyst on Plaintiff's hip given her symptoms.  ECF No. 124-9 at 31.  He further opined:

Based on Ms. Moore's chronic right hip pain, physical exam after the incident, and ability of jail clinical staff to observe Ms. Moore while

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 24

1   she is in medical observation housing awaiting x-rays and
2   improvement, the standard of care was met. Standard of care is defined
    as what a reasonable peer provider would do with similar clinical
3   information. A similar correctional physician in my opinion would
    provide the same diagnosis and treatment plan.

4   *Id*. at 32.

5       And Defendants' orthopedic specialist, Dr. John Hung, found that jail

6   medical providers administered appropriate medical attention provided to Plaintiff

7   during the timeframe she was reporting "groin pain," and after the incident on

8   October 29, 2019. *Id*. at 66.  The Eighth Amendment requires a reckless disregard

9   of a risk of harm of which the actor is actually aware. *Farmer v. Brennan*, 511

10  U.S. 825, 838 (1994).  And the Fourteenth Amendment requires that a plaintiff

11  show that the medical professional behaved with "reckless disregard." *Castro*, 833

12  F.3d at 1071.  Based on this unrebutted testimony by Defendants' experts, the

13  Court does not find that Plaintiff received *any* substandard care by PA Paul or

14  Nurse Bruce that should be subjected to a constitutional analysis.

15      Similarly, the Court finds that summary judgment is proper with respect to

16  Plaintiff's *Monell* claim.  In her Fourth Amended Complaint, Plaintiff argues that

17  Defendant Naphcare had a pattern or practice of denying medical evaluations by

18  qualified staff at the Spokane County Jail and failure to recognize and respond

19  appropriate to the medical needs of inmates.  ECF No. 88 at 14, ¶ 38.  She also

20  alleges that Defendant Naphcare failed to train employees to recognize serious

medical needs, effectively communicate with other healthcare providers and non-medical jail staff, and to ensure compliance with the requirement to provide adequate healthcare. *Id*. at 15, ¶ 39. Moreover, in her Response to the present motion, she cites her repeated request for care not being taken seriously, including after the events of October 29, as evidence of a pattern or practice, but does not reference any entity with particularity. ECF No. 127 at 7–8.

A municipality cannot be held liable under § 1983, except if a plaintiff can prove that it has a policy or custom which led to a constitutional violation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Under a *Monell* framework, a plaintiff must demonstrate: (1) he or she had a constitutional right of which he or she was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his or her constitutional right; and (4) "the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). There are three ways a plaintiff may satisfy the *Monell* policy requirement: first, a government may act pursuant to an expressly adopted policy, second a government may act pursuant to a "longstanding practice or custom," *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014), and third, the person who commits the constitutional violation acts as a final governmental policymaker or such an official "ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v.*

1  *County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010).  Private entities

2  acting under the color of state law may be held liable under a *Monell* theory of

3  liability.  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

4  However, there is no theory of *respondeat superior* theory of liability under

5  § 1983, and instead a plaintiff must show the requisite policy, practice, or custom

6  of the entity.  *Monell*, 436 U.S. at 691.

7         Even if she could demonstrate a constitutional violation, Plaintiff offers no

8  evidence that any of the entity Defendants had a policy, practice, or custom that

9  facilitated violations of her constitutional rights.  Her complaint contains

10  unsupported allegations that other inmates have received inadequate healthcare at

11  the Spokane County Jail, and that Naphcare intentionally provides substandard

12  care, with discrete actions such as not transporting injured inmates to the hospital,

13  to save money.  ECF No. 88 at 15–17, ¶¶ 39–45.  To make the requisite showing, a

14  plaintiff must demonstrate that practice which caused the constitutional violation

15  was, "so permanent and well settled," it was effectively the entity's policy.

16  *Gordon v. County of Orange ("Gordon II")*, 6 F.4th 961, 974 (9th Cir. 2021).

17  "Liability for improper custom may not be predicated on isolated or sporadic

18  incidents; it must be founded upon practices of sufficient duration, frequency and

19  consistency that the conduct has become a traditional method of carrying out

20  policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  Moreover, a plaintiff

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 27

must identify more than just a policy or custom attributable to the entity which caused injury, there must also be a demonstration that the policy was adhered to with deliberate indifference. *Castro*, 833 F.3d at 1076. Here, Plaintiff has offered nothing beside her own recounting of the medical treatment she received while at the Spokane County Jail and allegations for which she offers no evidence to establish a pattern or practice, and therefore has failed to create a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23 (1986). Summary judgment is proper.

//

//

//

//

//

//

//

//

//

//

//

//

ORDER GRANTING DEFENDANTS' DAUBERT MOTION AND
NAPHCARE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 28

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendants' Joint *Daubert* Motion (ECF No. 122) is **GRANTED**.

2.  Defendants' Motion for Summary Judgment (ECF No. 123) is

    **GRANTED**.

3.  Judgment shall be entered in favor of Defendants Naph Care Inc., Denae

    Paul, and Tsubasa Bruce.  Partial Judgment shall be entered in favor of

    Defendant Spokane County.

4.  The file remains **OPEN** pending the filing of a settlement agreement

    between Plaintiff and the Spokane County Defendants.

The District Court Executive is directed to enter this Order and furnish

copies to counsel.

DATED May 8, 2025.



THOMAS O. RICE
United States District Judge